**IN THE COURT OF APPEALS OF IOWA**

No. 22-0549
Filed March 8, 2023

**IN THE INTEREST OF S.I.,**
**Minor Child,**

**D.I., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.

A father appeals the private termination of his parental rights. **AFFIRMED.**

Fred Stiefel, Victor, for appellant father.

J.O., Lincoln, self-represented appellee guardian.

David R. Zellhoefer, Waterloo, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

A father appeals from the private termination of his parental rights under Iowa Code chapter 600A (2021). Finding the evidence supports that the father abandoned the child and termination is in the child's best interests, we affirm the juvenile court.

The child at issue, a kindergartener at the time of trial, has resided with her maternal grandmother since 2016. That year, the father and mother were arrested after methamphetamine and a large quantity of cash was found in the car with them, the child at issue, and the child's older half-sibling. Both parents were then incarcerated on methamphetamine-related charges, leading to the child's placement with the grandmother and her appointment as the child's legal guardian. As guardian, the grandmother filed this 600A petition to terminate the father's parental rights.

The father has a lengthy criminal history dating to 2010, and he has been in and out of prison since then. At the time of the termination trial, the father was incarcerated for possession of methamphetamine and a parole violation, and he was again awaiting parole. The father has abused methamphetamine for years, before and after the child's birth, and no treatment program has successfully broken his addiction. The mother died in 2021, apparently due to her own methamphetamine addiction.

While incarcerated between 2016 and 2019, the father had two in-person visits with the child and phone calls a few times per month. After his release in 2019, and before he was detained and incarcerated on different felony charges, the father visited the child at the grandmother's house about once per week, for

about one hour at a time. He also attended some activities. All of these visits were supervised, due to the father's criminal history and problems with methamphetamine. He made no attempt to regain custody of the child or terminate the guardianship.

Since the father returned to jail and then prison in 2020, he has not had any in-person contact with the child. He speaks to her by phone about once per week, but "[t]he calls are usually quite short and [the child] often does not have a lot to say." The father has also paid between $8 and $36 per month in child support, which is taken directly from earnings at his prison job. Overall, the father has spent more of the child's life in prison or jail than out.

The child is thriving in her grandmother's care. Her home life is stable, including consistent daycare, friendships, and schooling. The grandmother intends to adopt the child "for the long haul" and continue to care for her after termination. The grandmother has also facilitated the child spending time with a half-sibling on the father's side and intends to continue facilitating those visits after termination. The father agrees that the child is well-cared for "in a good home."

The grandmother and the father both testified at the termination trial, and the juvenile court found both "testified credibly and without embellishment." A guardian ad litem (GAL) was appointed to represent the child's interests, and the GAL recommended termination. The juvenile court considered multiple grounds for termination but found only one—abandonment—was supported by the evidence. This appeal by the father follows.

We review private terminations of parental rights de novo. *In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). "Although we are not bound by them, we give weight

to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.*

Under Iowa Code chapter 600A, the child's welfare is "the paramount consideration," but we are also required to give "due consideration" to the parent's rights. Iowa Code § 600A.1(1). The petitioner in a 600A action must satisfy a two-step analysis by clear and convincing evidence: (1) a threshold determination under section 600A.8 and (2) termination is in the best interests of the child. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018).

The first step is whether the father abandoned the child under section 600A.8(3)(b). That section provides in pertinent part:

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).

The juvenile court found that subparagraphs (1) and (3) were not at issue, as the father had been incarcerated for nearly two years before termination and had no in-person visits during that time. We agree with this analysis and do not disturb that finding.

The more difficult question, in both our view and that of the juvenile court, is subparagraph (2)—regular communication with the child. The juvenile court found that while there was "continuous or repeated contact" with the child, the contact was not "substantial." The juvenile court relied on a dictionary defining "substantial" as "large in size, value, or importance," and reasoned:

> In the life of a six year old, the disembodied voice of a person she has not seen in nearly two years for a few minutes once a week or so leads the court to believe that this phone contact has not been substantial or large in value or importance to [the child].

We agree with this reasoning, particularly given that the father's lack of substantial contact with the child is due solely to forces within his control—namely his persistent criminal conduct and the resulting repeat incarceration. We also read this analysis as consistent with—not contrary to—the statutory language.

In affirming the juvenile court, we are mindful of the supreme court's observation that a father "cannot use his incarceration as a justification for his lack of relationship with the child. This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." *M.M.S.*, 502 N.W.2d at 8. In other words, while incarceration alone does not justify termination, the law cannot reward a father who has "made a conscious choice to engage in crimes, resulting in his convictions and incarceration, at the expense of building a relationship with his [child]." *In re C.A.V.*, 787 N.W.2d 96, 101–02 (Iowa Ct. App. 2010).

The final step of our analysis is to determine whether termination is in the best interests of the child. We conclude it is. The child is thriving in a stable and secure home. In contrast, as the juvenile court put it, the father "has truly had

every opportunity to be a bigger and more meaningful part of [the child]'s life, but has continually chosen drugs and crime over [her]." We also recognize that the father's past behavior is a good predictor of his future behavior, *see In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998), and no evidence shows he can stop the cycle of methamphetamine addiction, criminal activity, and incarceration. To date, the father has failed to "affirmatively parent" this child the way she and all other children deserve, and there is no reason to expect that to change. *See In re B.L.A.*, 357 N.W.2d 20, 23 (Iowa 1984). Termination is in the child's best interests.

**AFFIRMED.**

Bower, C.J., concurs; Badding, J., dissents.

**BADDING, Judge** (dissenting).

I respectfully dissent in this close case on the ground of abandonment under Iowa Code section 600A.8(3)(b) (2021).

In determining whether this ground had been proven by the child's grandmother by clear and convincing evidence, the juvenile court's decision hinged on its interpretation of the word "substantial" in the predicate language of section 600A.8(3)(b). The court reasoned:

> [U]nder subsection 2, it is undisputed that [the father] has had regular communication with [the child] or [her grandmother] while he has been incarcerated and was physically unable to visit [the child] in person. As he has called her approximately once a week, [the father] certainly can be said to have "continuous or repeated contact" with [the child]. What's less clear, is whether these brief phone calls are "substantial." The word "substantial" does not appear to be defined in the Code. However, the Cambridge Dictionary defines "substantial" as "large in size, value, or importance." In the life of a six year old, the disembodied voice of a person she has not seen in nearly two years for a few minutes once a week or so leads the court to believe that this phone contact has not been substantial or large in value or importance to [the child].

But the statute *does* define "substantial" in its predicate language and the alternatives listed in subparagraphs (1) through (3):

> A parent is deemed to have abandoned the child *unless the parent maintains substantial and continuous or repeated contact* with the child *as demonstrated by* contribution toward support of the child of a reasonable amount, according to the parents means, *and as demonstrated by any of the following*:

Iowa Code § 600A.8(3)(b) (emphasis added); *accord id.* § 600A.2(20) (defining "[t]o abandon a minor child" to mean that a parent "rejects the duties imposed by the parent-child relationship," which may be shown "by the person, while being able to do so, . . . making only a marginal effort to . . . communicate with the child"). With the extraneous definition of "substantial" removed from the analysis, I would

find the grandmother did not meet her burden to prove the father abandoned the child.[1]

The father lived with the child for the first seven or eight months of her life until he was arrested on drug charges. Though the father spent three years in prison on those charges, he saw the child twice in person and talked to her on the phone "once or twice every two weeks." When he was released in February 2019, the father went to the grandmother's house and visited the child "[o]nce or twice a week" for about an hour each time. He would occasionally spend the night at the grandmother's house with the child, and he would attend some of the child's events, like her dance recitals. Once the father went back to prison in May 2020, his contact with the child was once again limited to phone calls. But he made those calls regularly—usually on Sundays at around 6:00 p.m. While the calls did not last long, the child called him "Daddy" and told him that she loved him. The father also sent the child holiday and birthday cards.

Because the father visited the child at least monthly when he was not incarcerated, and regularly called and corresponded with her when he was, he maintained "substantial and continuous or repeated contact" with the child under section 600A.8(3)(b)(1) and (2). Though the father could certainly have done more to be a better parent, given the actions he did take, I find that his "efforts were more than 'marginal' and do not justify a finding of abandonment." *In re R.G.*, No. 21-

---

[1] The juvenile court briefly addressed the threshold requirement of section 600A.8(3)(b)—economic contributions—in finding the father "contributed minimal financial support of the child through the wages he has earned while in prison." *See In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015) ("Under section 600A.8(3)(b), the threshold element of 'substantial and continuous or repeated contact' is economic contributions.").

1744, 2022 WL 2160691, at *4–5 (Iowa Ct. App. June 15, 2022) (finding an incarcerated father had not abandoned his child where he "wrote letters, made phone calls, asked for visitation, and sought updates" when incarcerated and regularly, though inconsistently, visited the child when not incarcerated); *cf. In re S.A.*, No. 17-0859, 2018 WL 1182889, at *3 (Iowa Ct. App. Mar. 7, 2018) (collecting cases that found abandonment where a parent's efforts at communication amounted to nothing "more than a few sporadic attempts").

I reach this finding even though it is tempting to grant the grandmother's termination petition because of the loving and stable home she has provided for the child, which stands in stark contrast to the years the father has spent abusing drugs, committing crimes, and sitting in prison. But we must operate within the confines of chapter 600A, which places a "significant burden" on the party seeking termination "to prevent an erroneous and irreparable deprivation of a parent's right to raise his or her child[]." *In re E.S.*, No. 16-0066, 2016 WL 7403746, at *3 (Iowa Ct. App. Dec. 21, 2016). Because the grandmother did not meet that high burden, I would reverse the juvenile court's decision granting her petition to terminate the father's parental rights under the ground of abandonment.